to Emma Garp Fund versus Banro Corporation. Ready when you are, Mr. Kalbera. Good afternoon. May it please the Court. Kurt Kalber on behalf of Appellants, EMA Garp Fund, and Lawrence Depard. Your Honors, we're here on appeal of a district court dismissal of a securities fraud action on the grounds of international comedy abstention. As the Court is aware, comedy abstention has a purpose in the context of foreign insolvency proceedings, of assembling claims that are parallel before one forum for their orderly administration. In this instance, the Court's dismissal of my client's action resulted in the exact opposite effect. The result of the Court's order is the entire extinguishment of my client's case, both in the United States and in Canada. That result is unjust, and under the totality of the circumstances and the equities of this case, we are respectfully requesting that that decision be reversed. The Court thought that the reason you didn't have a forum in Canada was that you didn't avail yourself of it when you had the opportunity. So how does that alter the concern that you've just asked us to be focused on, that you left without a forum? Thank you, Your Honor. I respectfully disagree with the district court that opportunity is relevant to the consideration. Opportunity, it should be entirely irrelevant to the Second Circuit law on international comedy abstention. The law is that a parallel proceeding is required. That's not the case in bankruptcy proceedings. I mean, we have said in bankruptcy proceedings the pertinent question is whether they had the right to submit claims in the forum proceeding. We said that in all State life. I mean, the parallel proceeding concern arises in the non-bankruptcy context, doesn't it? It comes from Colorado River. I agree with Your Honor that in the context of most of the opinions this Court has written, that is the case. But there is no pronouncement of that as a matter of law. And if I could direct the Court's attention to the case of J.P. Morgan Chase Bank v. Altos, which is a Second Circuit decision from 2005, where the Court specifically in finding that a parallel proceeding existed in a foreign insolvency proceeding specifically reasoned, and I'll quote, that J.P. Morgan appeared before the Mexican court and was acknowledged as a general unsecured creditor that owed a debt of $225 million, and thus the Court found that a parallel proceeding existed. Well, there's not a parallel proceeding here because the parties aren't the same. I agree. There's absolutely not a parallel proceeding. In Cunard Steamship Company, we said that we'll give comity to a foreign bankruptcy proceeding. That means that the creditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened foreign bankruptcy tribunal. You had the opportunity to do that and did not. That's the basis for affording international comity, isn't it, under our precedent? I believe under our precedent. I know that's what the Court did. Well, it's Cunard and it's all state-like. And they're all factually distinguishable, Your Honor. In Allstate, which is the case which both the district court and defendants principally rely, the Court expressly found, and I'll quote from Allstate, there was, quote, no indication that appellants would be prejudiced if they were required to maintain their actions in Australia, end quote, because there were already pending securities actions in Australia that they had filed. So there was a parallel action. And the reason why I think a lot of the Second Circuit courts haven't squarely addressed this matter is because in those opinions, that was not a dispute. There was no issue. So it wasn't discussed. But the concern is whether having had the opportunity to be heard in the Canadian bankruptcy and just ignored it, you now get to bring an action in the United States courts? That seems to flout the principle of international comedy rather than support it. Respectfully, Your Honor, I don't think it does, and for two reasons. One, if you look at the factual sequence of events, which I can delve into, more importantly, the narrow issue before the Court is whether international comedy was properly granted in this case. And international comedy does require a parallel proceeding. The whole concept is to bring claims together to one forum. Here, there was we never filed the claim in Canada, we never litigated anything that appeared in Canada, and in response to us commencing this action in U.S. District Court, Banner immediately went and within three weeks got an order extinguishing our claims altogether. So how can they say through one side of their mouth, we want to assemble all claims in Canada, and then the other side, they run and extinguish our claims? We were the first filed action. We had never filed a proceeding in Canada before or even filed a claim. That Court has no jurisdiction, no personal jurisdiction over my client. If they wanted us to go to Canada, they should have provided us with a venue or an avenue to get to Canada, particularly in a case like this. If you look at what happened in terms of the facts, Banro is still in existence. They own one of the largest gold mines in Africa. They have $18 billion of gold in the ground. They raised $500 million on the New York Stock Exchange, and in December of 2018, got delisted from the New York Stock Exchange. That delisting did not add up in my client's mind for what was represented to him. He felt he was misled and misrepresented. Immediately engaged counsel to perform an investigation. We performed an investigation throughout January and February, which included sending people into the DRC, which was dangerous. And from that investigation, we discovered securities fraud, and we filed a complaint, a very well-pled, detailed complaint, detailing the securities fraud, which was filed as soon as possible in March of 2018. And within three weeks, the Canadian court issued an order discharging our claims altogether. This is not an instance where my client had sat on his hands. The Supreme Court law from Colorado states that international companies should be judged on a case-by-case basis. In this instance, my client did not sit on his hands, brought his claims as quickly as possible, and there was no parallel action. My client is simply just asking for his day in court, and I respectfully submit that the decision of the district court was an abuse of discretion. And why exactly did your client decide not to participate in the Canadian bankruptcy proceeding? Well, as a firsthand matter, Your Honor, there was not a lot of time at all from the time we filed our action. His claims arose under U.S. federal securities law for conduct occurring in the United States in violation of the law. No, I understand that. Yeah. So there were statute of limitations issues. But my client arguably had a – you arguably at least had an opportunity to participate in the Canadian bankruptcy proceeding, right? Yes. You knew about it. Correct, Your Honor. And you concluded, obviously, that it was not in your interest to pursue it in Canada. I wouldn't say that, Your Honor. I would say that we had a right to maintain, to bring our action here, and we thought it appropriate that if the Canadian proceeding or the defendants sought to send it to Canada, they would have to come to the district court and convince the district court to transfer our case to Canada. And if that had happened, this would be a different scenario. But in response to our filing the action – How does it differ from the scenario you described? Because in response to us filing the action, Banro went and got an order precluding us from going to Canada. They didn't come to us and say, hey, please, Your Honor, bring this case to Canada. They said, no, you can't come to Canada. And that – They got an order from whom? From the district court. Well, I'm sorry, from the insolvency proceeding in Canada. They immediately ran into the court in Canada, and within three weeks from the date of our filing of the complaint, got an order extinguishing our case altogether. And you were heard in that or not? No, never heard, never appeared, never presented, nothing. And you – were you served with the order that precluded you from going to Canada? Yes, Your Honor. And did you ask to be heard in Canada on that? No, I did not, Your Honor. And the reason is, our position is that that should be brought to the district court to decide. We know that that's your position, but why don't you focus on Judge Raji's question as to why you didn't? It's a friendly country. It's not like the D.R.C. I mean, so what was the problem? We're not obligated. The simple answer, Your Honor, is that we brought the case to the district court. In our opinion – But you took a calculated risk, basically. It was the district court judge's case. It was their case. We brought it there. Our position is, she had the authority over the case, and we would do whatever she ordered. And if Banner Corporation wanted us in Canada, ask the judge, and if the judge sent us there, then so be it. It seems to me imprudent not to have acted in both venues to make sure you didn't lose the – whatever advantages you arguably had in Canada. Your Honor, I'm not a Canadian lawyer. I can tell you that we had no – my understanding of the applicable law is there was no obligation to do it. And, again, I don't want to repeat myself. That's the question of whether our case law says that you do have an obligation to take that first. Help me out. My understanding from the record is that Banner's bankruptcy counsel told your client's counsel – I don't know if that was you at the time – that a hearing on the reorganization plan was scheduled for March 27, 2018. And you were given an opportunity, according to the record, to participate in that. That's even though you hadn't filed a claim or whatever. Why did you not take advantage of that? Again, we were not obligated to. We had a pending action regarding the subject matter in federal court, and our position is we had no obligation to, and that they should come to the district court and ask for the case to be transferred to Canada if that's what they wanted to do, which is not what they did. And your view on our precedent that says that international company is appropriate when you could be heard in the Canadian proceeding, that creditors of an insolvent foreign corporation may be required to assert their claims before a duly convened foreign bankruptcy tribunal? If they're given – if the district court gives them an opportunity, they should be given a present opportunity to litigate those claims in Canada, which is what we were not given. Well, you could have, though, gone into the creditors' proceeding in Canada and asserted these claims. You never appeared in anything in Canada. Correct, Your Honor. And you're now asking us to assume that the Canadian courts wouldn't have heard you on anything. No. I'm not asking that for you, Your Honor. They – there's an order dated March 27th from the Canadian court which Banro obtained extinguishing all claims in the pending U.S. district court action. When you get up to rebut, could you just tell us the appendix page for that order? Okay. Thank you. Thanks very much. Thank you, Your Honor. You'll have some more time. Mr. Gallagher. Good afternoon, and may it please the Court. Joseph Gallagher of Harris St. Laurent for Defendant Appellee, Banro Corporation and John Clark. The district court was right to dismiss the amended complaint on the grounds of international comedy. This Court has long held it appropriate to decline to hear creditor claims that are the subject of foreign bankruptcy proceedings because, as this Court explained in all state life insurance, which has remained good law for over two decades, such deference, quote, enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner rather than a haphazard, erratic, or piecemeal fashion. Now, I'd like to go to – What would you say to this claim they're making that you went into Canadian court and you got their claims extinguished? I say to that that that was the normal function of a Canadian bankruptcy proceeding. When did you do that? We filed for bankruptcy on December 22, 2017. In early February of 2018, the Canadian court issued what's called a claims procedure order, which invited people to submit the Canadian equivalent of a proof of claim and apply for the Canadian equivalent of an adversary proceeding to hear their claims. I understand that, and I understand about March and the pre-hearing. So when did you seek to get this up, this order that extinguished their claims? The order that extinguished the claims was issued when the plan of reorganization was approved on March 27, 2018. So that's after you had advised them that they could be heard on March 27 on the hearing on the reorganization plan. Is that right? That's correct, Your Honor. I just wanted to get the sequence correct. Tell us about that sequence to make sure I understood your response to Desiraji. Of course, Your Honor. The bankruptcy proceedings were filed in December. The day after, or the two days after the bankruptcy proceedings were filed, one of the appellants, Mr. Lippard, wrote to the Canadian judge advising him of his views on the ability to obtain justice in Canada and the propriety of those proceedings. As is set forth in the Declaration of Jane Dietrich, at paragraph, I believe on page 111 of the record, counsel in Canada for Bannereau wrote back to Mr. Lippard's counsel with a copy of the initial order, the equivalent of a first day's order here, saying you can submit your claim, you should obtain proper Canadian counsel and appear and essentially you will be heard. On your view, they had notice? Not only in my view that they had notice, they've conceded at the lower court level that they had notice. And so what this was, was the order at the end of the bankruptcy proceeding extinguishing all claims and it extinguished their claims, if I'm quoting correctly, because of noncompliance with the claim procedure order? That's correct, Your Honor. Is that the language of the Canadian court or is that the declaration of Mr. Dietrich? That is the language of the Canadian court that Ms. Dietrich is quoting. Do you know the page in the appendix that has that? I can get that for you if you give me one moment. I must confess I didn't bring everything with me, but go ahead. No problem. It is much later on in the appendix and I think it will come up at some point. Okay. So just to circle back to the point that you were making, Judge Raggi, this was essentially the order confirming the plan at the end of a bankruptcy that in a U.S. bankruptcy court would be de rigueur. Now one housecleaning issue I'd like to address here is just the standard of review applicable to this case because this was heavily contested in the briefing. Under Allstate and J.P. Morgan, this Court has been abundantly clear that decisions to abstain on grounds of international comedy, specifically when they involve foreign insolvency proceedings, are subjected to an abuse of discretion review. Now, our adversaries have suggested that there is a standard of review more approaching de novo, but the cases that they cite for that proposition are an opposite because all of the cases involving a standard of review more close to de novo are, in fact, other forms of extent of other forms of abstention operating under other abstention doctrines, including the Rooker-Feldman doctrine, which shows up several times in these cases. So the standard review here is abuse of discretion, and Judge Fallea had the discretion to dismiss the claims against both Bannero and Mr. Clark and did so. And the assumption that Judge Fallea's assumption would have been that they could seek relief in Canada or they could have sought relief. Both. I fail to understand the difference, Your Honor. I apologize. After Judge Fallea's decision, could they have gone to Canada? After the decision, no, but they were afforded every opportunity to do so before the decision because the claims were not extinguished until several weeks after this case was filed and more than two months after they were first given notice of dependency of the Canadian bankruptcy proceedings. So what is it that she's deferring to? She is deferring to the conclusion of the bankruptcy proceedings, though this Court's jurisprudence does not require the bankruptcy proceedings to be concluded. You know, there are several cases cited in our briefing, I believe including Allstate itself, where the Australian bankruptcy in that case was ongoing. It was not concluded at the time. And the Court, in an abundance of caution and out of deference based in international comedy, decided to allow the bankruptcy case to proceed. And the logic behind that has stayed sound over the years. You know, this Court has said in the Vitrix case from many years ago, the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding. If all creditors could not be bound, a plan of reorganization would fail. And that's exactly the idea that was motivating, at least from the words that she wrote on the page, Judge Fiala's opinion, that all of the claims here, in order to effectively deal with creditors and the debtors' obligations, should be put into one proceeding that was filed in Canada. I know Mr. Kalber has said that his action in the Southern District of New York was the first filed action because it was filed on or around March 5, 2018. But the bankruptcy proceedings itself preceded that by over three months. Now, with that said, I'd like to talk about the standard for extending comedy just a little bit to make sure that we have it on the record here. It's been extensively briefed, but comedy may be granted when it's shown that the foreign court is a court of competent jurisdiction and that the laws of public policy of the foreign state and the rights of its residents will not be required. That's from page 999 of the Allstate decision. And the law governing these matters are laid out on page 999 and 1000 of that decision. Now, nowhere in the proceedings below or even in the briefing before this Court has anyone challenged the bona fides of the Canadian bankruptcy proceedings. The Canadian Bankruptcy Court is not some star chamber that does not afford due process to parties appearing before it. In fact, Judge Fiala has concluded in her opinion that the due process protections created by the Canadian Bankruptcy Court provided in the statute, which is the Canadian equivalent of Chapter 11, and set forth in the initial order, do comport with due process. And there's no basis to disturb her conclusion on that, and I don't think our adversaries establish any. One issue that came up earlier in the argument here is the existence of a parallel proceeding. And I'd like to hearken back to Judge Raggi's questioning. There was no parallel proceeding here because the plaintiffs decided not to engage in one after being given every opportunity to appear in the Canadian court. But more importantly, the law itself does not require a parallel proceeding in the foreign insolvency context. And this Court made that clear in Allstate. And that comports with the very purpose of a foreign insolvency proceeding as set forth in Allstate and Vitrix. Because without that, foreign insolvency and insolvency in general in this interconnected world would be thrown outside its head because you would not have a single forum that one party could be sure, that a debtor would be sure it could dispose of all of its claims in. One other issue that has come up both in this argument but more in the briefing because of the citation to Colorado Riverwater is the exceptional circumstances rule. There do not need to be exceptional circumstances in the foreign insolvency proceeding to justify dismissal of a case on grounds of international comedy, largely because doing so, as I've said several times here, would upset the very purpose of international comedy. All right, Mr. Gallagher. Thank you very much. Thank you very much, Your Honor. Calabreau will reserve three minutes. Your Honors, what counsel is asking this Court to rule is that a parallel proceeding not be required in this circuit, and all that be required is that if you could have brought a parallel proceeding, then therefore your claims could be dismissed under international comedy. And the problem with that is now what effectively is going on is the district court is basically in a de facto sense recognizing an order of dismissal from a foreign insolvency court. And that is a power the district court does not have under Chapter 15 of the Bankruptcy  Act. The U.S. bankruptcy courts have exclusive authority to recognize orders aiding foreign insolvency courts, and by dismissing this action on these grounds and not requiring a parallel proceeding, you're effectively just recognizing an order of dismissal from a foreign bankruptcy court, which cannot be done. And that's why I respectfully urge this Court to uphold its standard and require a Thanks very much. Thank you. We'll reserve the sitting.